MIED (Rev. 03/11) Prisoner Civil Rights Complaint

*31*

**Official Use Only**

| Case Number | Judge | Magistrate Judge |
|---|---|---|
| | | |

Case: 2:12-cv-13523
Judge: Cohn, Avern
MJ: Whalen, R. Steven
Filed: 08-09-2012 At 02:41 PM
PRIS MATELIC V. MENDOZA ET AL (DA)

## PRISONER CIVIL RIGHTS COMPLAINT

*This form is for use by state prisoners filing under 42 U.S.C. § 1983 and federal prisoners filing pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).*

**Plaintiff's Information**

| Name | | Prisoner No. |
|---|---|---|
| JOHN MICHAEL MATELIC | | 2012011262 |

Place of Confinement
WAYNE COUNTY JAIL

| Street | City | State | Zip Code |
|---|---|---|---|
| 525 Clinton Street, | Detroit | MI | 48226 |

Are there additional plaintiffs?   ☐ Yes   ☑ No

*If yes, any additional plaintiffs to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. <u>You must provide names, prisoner numbers and addresses for all plaintiffs.</u>*

**Defendant's Information**

| Name | | Position |
|---|---|---|
| Benny Mendoza | Detroit Police Department | Detective |

| Street/P.O. Box | City | State | Zip Code |
|---|---|---|---|
| 1300 Beaubien | Detroit | MI | 48226 |

Are you suing this defendant in his/her:   ☐ Personal Capacity   ☐ Official Capacity   ☑ Both Capacities

Are you suing more than one defendant?   ☑ Yes   ☐ No

*If yes, any additional defendants to this action should be listed on a separate 8½" x 11" sheet of paper and securely attached to the back of this complaint. <u>You must provide their names, positions, current addresses and the capacity (personal, official or both) in which you are suing them.</u>*

1

MIED (Rev. 03/11) Prisoner Civil Rights Complaint

## I. PREVIOUS LAWSUITS

Have you filed any other lawsuits in state or federal court relating to your imprisonment?

☐ Yes        ☑ No

If "Yes," complete the following section. If "No," proceed to Part II.

Please list all prior civil actions or appeals that you have filed in federal court while you have been incarcerated.

| Docket or Case Number: |
| --- |
| Name of Court: |
| Parties (Caption or Name of Case): |
| Disposition: |

| Docket or Case Number: |
| --- |
| Name of Court: |
| Parties (Caption or Name of Case): |
| Disposition: |

| Docket or Case Number: |
| --- |
| Name of Court: |
| Parties (Caption or Name of Case): |
| Disposition: |

***Any additional civil actions should be listed on a separate sheet of 8½" x11" paper and securely attached to the back of this complaint.***

2

## II. STATEMENT OF FACTS

State here, as briefly as possible, the facts of your case. Describe how each defendant is involved. Include the names of other people, dates and places involved in the incident. Do not give any legal arguments or cite any cases or statutes.

( SEE ATTACHED)

## III. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated, and be specific.  Set forth each claim in a separate paragraph.  If you intend to allege several related claims, number and set forth each claim on a separate 8½" x 11" sheet of paper and securely attach the papers to the back of this complaint.

( SEE ATTACHED)

## IV.  RELIEF

State briefly and exactly what you want the Court to do for you.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.**

Executed (signed) on __29 July 2012__ (date).

_____
Signature of Plaintiff

## STATEMENT OF FACTS

This all started when an informant used by the Detroit Police Department, followed up on a possible lead to a commercial property crime for breaking and entering, which resulted in the illegal search (without a warrant), after the fact of gaining access to my female friend's home via consent by her children, who are below the age of consent. While there, both officer(s) MENDOZA and PARA continued to question these minor's, one of which is unusually vulnerable; as to where the plaintiff was. When the children failed to disclose these whereabouts, said officer(s) proceeded to bribe them with a [$100.00] dollar bill of U.S. currency, then compounded this act by using slander and libel in an attempt to manipulate and coerce these innocent children by telling them this plaintiff "Robbed an elderly woman, raped her, and then put her in a closet for dead!" At this point in their malfeasant interrogation (without the parent present in the home); they left the locus delicti. Approximately one hour later, these same two officer(s) returned to this home, with the children's mother present, brandishing their side-arms in view of the children (further traumatizing them) reiterating the same slander and libel as before. At that point, when the agents seen they had nothing, they departed. Immediately after this event, my (said) friend called me, angry at me for this intrusion in her and the children's lives.

Further, she said she doesn't believe I'm that type of person. She then gives me a contact number left by officer MENDOZA, then I hang up. That is when I initiate communications and ask him: "What do you want me for?" And he responds: "You know what I want you for!" Then I say: "No, I don't know, tell me why?" And he responds: "For one, you have misdemeanor warrants; we need to talk." I then ask him if he has a warrant for my arrest. He states he does not, and that "you are wanted for questioning." Said officer does not say why. I asked at this point, "Why would you offer children money and make false allegations about me?" This ended the call. I was scared of this officer. Eight weeks passed after this incident, so I decided to call this officer once more making inquiry about the status of his alleged warrants against this plaintiff. He states he still has no warrant for my arrest. At this point, I end this call, where I go to mine and my girlfriend's apartment, not knowing minute by minute what was going to happen. As a last option of hope in my mind, for some way to intervene between my fear of officer Mendoza and my willing choice to come forth and be questioned so I can put this confusion behind me; I contacted the Detroit Police Department's Internal Affairs Division (IAD), to inform them of officer Mendoza's actions towards this plaintiff. They made a Report. Approximately

[- 2 of 25 -]

two months later, I called (IAD) again for the purpose of making arrangements for safe passage for this questioning with officer MENDOZA, because I'm tired of feeling and being treated like a suspect for the alleged offense. Whereby An (IAD) representative was supposed to meet me and officer MENDOZA at the Oakwood Cafe in the city of Melvindale, MI. When I arrived near the Cafe in the area (IAD) is not there. So I wait for [45] minutes more, and still no arrival. Whereon, I call the Detroit PD's (IAD) number asking what is taking so long. The representative informed me that he could not get out of the office, and that I should just meet officer MENDOZA by myself. I told him: "No, I won't do that." Wherefrom, I went back home to my apartment where my girlfriend and her female neighbor friend were waiting. About ten to fifteen minutes later, after I had arrived and changed into my shirt, pajama-bottoms, and slippers to relax; which was only a Ten minute ride from the arranged meeting place to my apartment; someone knocked on the apartment door. I went to the door and asked who it was. Officer MENDOZA said: "This is the police," then started hitting the door extremely hard. (THE DOOR WOULD NOT OPEN). Then they stopped for a moment. At this point I asked: "Do you have a Warrant?" Someone said: "Yes, at the bottom of my boot!" I told them they were not coming in. This is when they continued to beat on our door until

I told them to stop; and give me five minutes to kiss my girlfriend goodbye. They complied, for a moment, then began kicking the door furiously again and again. When I seen the door was about to come undone, I moved to the center of the room in my studio apartment and I raised my hands high above my head with my back to the officer(s). I could see the Melvindale Police in the back yard with dogs. I was scared. When officer(s) rushed into my place, one immediately fired his taser into my lower spinal-cord. I felt the rush of 50,000 volts of electricity surge through me, three [3] consecutive times. While I lay twisting and convulsing on the floor, all I can remember hearing was officer MENDOZA telling the tasering officer to: "Hit him again!'" And he did (the Melvindale Police). I was disoriented, confused, like I wasn't there. I remember being escorted out to the police car, and that is all at that point. —— I woke up Two [2] days later in the Sinai Grace Hospital. They informed me that I DIED at the Detroit Police Station (Southwest District), and I was rushed to the hospital. During this time, I was cuffed to the bed, and the handcuff's were so tight my wrists and hands were numb. After two more days passed, I woke up in pain WITH NO MEMORY of what had happened; then I was released. Wherein, Unknown officer(s) transported me back to the

Southwest district police station. Once there, I was moved to the interrogation room where both officer(s) MENDOZA and PARA tried to question me. This is when I countered their questions with some of my own (for example, "Why would you tell children a fabricated story about me beating, raping, and robbing an old lady and leaving her for dead in a closet"; and "Why would they bribe and coerce children with [$100.00] dollars to disclose where I was?").

This is when the interrogation ended quickly. They were pissed off. This is when Officer MENDOZA came over to me and grabbed me with both hands around my throat, then lifted me off my feet, choking me until I was about to pass out, then dropped me to the floor of the interrogation room. When I finally gained my senses, I ran out of there in front of their security camera's and began screaming: "I didn't go in there like this," showing the bruising around my throat with imprints of where his hands tried to kill me a second cumulative time in his custody. After this, they charged me, then put me in lock-up. In the morning, THEY LET ME GO, and told me that THEY DROPPED THE CHARGES. I believe shift command viewed the security camera footage and made an executive decision...

After I was released, I went to court to take
care of my two outstanding misdemeanor warrants.
Approximately two more month's after these events,
I was arrested by the Detroit Police for the alleged
crime of Breaking and Entering.

## STATEMENT OF CLAIMS

PURSUANT TO the doctrine of respondent superior, an employer or principal is liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency. But, when those acts become private while performed in the course of a public act or duty; they arise as a commercial activity exception, thereby stripping all U.S. Const. Amend. XI immunities and/or an agent's qualified immunity under 28 USCA §§ 1602-1611, by operation of law.

The plaintiff, based upon the above checks and balances platform; shall prove, point-for-point, the corrupt wilfull infringements of this citizen's constitutional Rights under the United States Constitution of 1789, by STATE OF MICHIGAN ("Principal") appointed officer(s) acting as ("Agents") under the police powers delegated to it under U.S. Const. Amend. X; to-wit:

1) QUESTION: Was this citizen's U.S. Const. Amend. IV, right violated when agent(s) enforced a feigned search and seizure Warrant of arrest without probable cause?

ANSWER: This citizen says Yes; because if probable cause was present, then there would have been no need for said agent(s) to conceal the writ of arrest when this free man

asked if the agent(s) had this document.

2) QUESTION: Was this citizen's U.S. Const. Amend. IV, right violated when agent(s), as a result of number [1] supra; breached the premises of his home when the plaintiff refused to comply with the belligerent agent(s) commands; because agent(s) refused to produce (before and after the breach) a validly issued Warrant, while he was in defense of his habitation?

ANSWER: This citizen says Yes; because the people have the right to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure; SHALL NOT BE VIOLATED.

3) QUESTION: Was this citizen's U.S. Const. Amend. VI, right violated when agent(s), as a result of number [1] and [2] supra; refused to inform him of the nature and cause of the accusation in connection with the aforesaid violations, as mandated by substantive law while acting under the color of authority?

ANSWER: This citizen says Yes; because the mandatory congressional language in this Amendment, vest in this man, the power to enjoy the right, as one out of many

[- 8 of 25 -]

reserved to the people in accord with U.S. Const. Amend. X.; and when agents of their [c]orporate principal overstep the ebb and flow of these most fundamental rights, it becomes the duty of this state and federal citizen to Petition the Government for a redress of grievances. U.S. Const. Amend. I.

4) QUESTION: Was this citizen's U.S. Const. Amend. VIII, right violated when said belligerent agent(s) illegally breached the residential door of his habitation, and without any warnings, deployed 50,000 volts of electricity from a taser, not once, but three [3] consecutive times simultaneously into this man's lower spinal-cord?

ANSWER: This citizen says Yes; because when an agent uses a taser on someone in an excessive, abusive manner, the agent violates that citizen's Fourth Amendment constitutional right to be free from unreasonable seizure; therefore, the fact that said agent(s) did tase this free man as such repeatedly, raises the inference prima facie that it was just out of a sense of sadistic pleasure without just cause; AND A CRIME. 27 CFR § 72.11; 28 USCA §§ 1602-1611, restrictive principle of sovereign immunity; thus, CRUEL AND UNUSUAL PUNISHMENTS INFLICTED, a denial and

disparagement of this certain Right that shall not be. U.S. Const. Amend. IX.

5) QUESTION: Was this citizen's Entitlement to all Privileges and Immunities of Citizens in the several States, while present in the State of Michigan; abolished when said agent(s) administered a Death Sentence against this free man as a resulting neurological side-effect of repeated taser deployments, three [3] consecutive times simultaneously; in violation of U.S. Const. Art. IV, Section 2, cl. 1; U.S. Const. Art. I, Sections 9, cl. 3; and 10, cl. 1, Bill of Attainder, ex post facto law?

ANSWER: This citizen says Yes; and here's why: For example, ventricular fibrillation is one fatal complication that may be triggered by a tasing. The heart beats in cycles, and if the taser shock(s) happen to hit the subject's heart at a certain vulnerable point during that cycle, it can lead to uncontrolled heart spasm and failure. —— The very fact that this man died post-arrest during transport from the agent(s) locus delicti, is conclusive evidence that said agent(s) WENT BEYOND THE STANDARD OF REASONABLENESS UNDER THE CIRCUMSTANCES, while this man stood in defense of his lawful habitation in his shirt, pajama-bottoms, and

[ 10 of 25 ]

house slippers, UNARMED; and compliant after the unlawfull adverse breach of his premises. Such taser deployments against this citizen without any warning, is ripe for civil remedy under Bryan v. MacPherson, ——F.3d——, 2010 WL 2431482 (Case No. 08-55622); but in a super-seding opinion the court reaffirmed its excessive force finding while reversing itself as to qualified immunity based on ambiguity in the law in 2005. AFFIRMED.

6) QUESTION: Was this citizen's U.S. Const. Amendments V, XIII, and XIV, rights violated when said State of Michigan agent(s) executed administrative process under the color of law further corroborating federal questions supra at [1-5]; by internally violating their corporate principal's substantive laws ("Public Policy")?

ANSWER: This citizen says Yes; and here's why: Pursuant to the Doctrine of Adverse Domination, said Agents operating under the delegated police powers to the States by the Constitution of 1787 at U.S.Const. Amend. X; owe a fiduciary duty to both of their corporate Principal's [1] the State of Michigan; and

[2] the United States. This duty is rooted from the lowest ranks of citizens in respect to the application of the public laws or Acts of the State wherein they reside, in accord with the obligation of contracts clause; Whereas: in like manner, each State as a Federal union Member, must conform to the substantive provisions and clauses within the Federal Constitution and/or delegated to them at U.S. Const. Amendments X and XI; as corporations are persons created by law [creatures of the law] and given certain legal rights and duties of a human being. And when said agents, act under their corporate principal's artificial persona, they are not constitutional citizen's for purposes of the Privileges and Immunities Clauses in Article IV § 2 and in the Fourteenth Amendment; but are clothed with sovereign power, and their acts of state are held to a higher standard of care; Whereon: When said agents or entity intentionally and wilfully, disregard this constitutional citizen's privileges and immunities by not following the Due Process and Equal protection Clauses of the Federal Constitution of 1787, this becomes a breach-of-fiduciary-duty by the wrongdoer agent(s) of the State of MICHIGAN, as against both of their principal's supra at [1] and [2]. As such, this plaintiff, is controlled by

the wrondoers herein named in the statement
of facts, held against his rights of Liberty by
state instrumentalities or entities, thus tolling
the statute of limitations accordant with FDIC v.
Shrader & York, 991 F.2d 216, 227 (5th Cir. 1993).
THEREFORE: The [S]tate of Michigan steps into
the shoes of the agents for purposes of liability
assessment and risk management when one
or more of its subordinates violate their fiduciary
duty to their principal by not faithfully discharging
delegated sovereign state police powers under
U.S. Const. Art. VI, cl. 3, EXECUTIVE OFFICERS BOUND
BY OATH OR AFFIRMATION, TO SUPPORT THIS CONSTITUTION.
(emphasis mine). This is obstruction of Justice;
Tampering with Due Process of Law; and an Abuse
of Rights; With full recourse, I said plaintiff
remain without prejudice towards triple damages.
When state agent(s) Killed/Murdered this man, who
was then rushed to the hospital where he had to
be revived from the dead, hence (DOA); he
was deprived of his Life, Liberty, and Property
without due process of law; put in jeopardy of
Life and Limb unreasonably; Tried, Convicted,
and Sentenced to Death ex post facto without the
right to a speedy and public trial (U.S. Const. Amend. VI)
by an impartial jury of the State; then exacted

an involuntary servitude by agents acting under color of law enforcing unlawful process; and stripped of all equal protections of the laws mandated under the FOURTEENTH AMENDMENT of the U.S. Constitution. Furthermore: When the state of Michigan allows its municipal agents to commit continuing ultra vires wrongful private acts, its liability is perfected for purposes of respondeat superior for standing silent while its said agents carry out defective process as it it were legal process backed by the [s]tates full faith and credit; therein constituting a sham and fruit-of-the-poisoness-tree ab initio. These acts committed infer a prima facie conspiracy (18 USCA § 371) against this state and federal citizen, in furtherance of a for profit municipal instrumentality; hence genuine official misconduct and Obstruction of Justice.

"All law is contract, Contracts make the law."

# ARGUMENT

PURSUANT TO the Foreign Sovereign Immunities Act;
it is a federal statute providing individuals with a
right of action against foreign governments, under
certain circumstances, to the extent the claim arises
from the private, as opposed to the public, acts of the
foreign state. 28 USCA §§ 1602-1611; BLACK'S LAW
DICTIONARY (ABRIDGED NINTH EDITION), p. 564. In this context;
Can police administrative officers of public law be
prosecuted for internal law violations, and misusing
tasers? Yes. Police are given wide latitude to use
force to defend themselves, subdue violent suspects
and maintain order. They're also issued a variety of
weapons, including batons, tasers and firearms. That's
a lot of power. But like all public servants who get
entrusted with power and discretion, it can lead to
abuse. When police taser a subject without just
cause, they commit a crime. 27 CFR § 72.11. If
police tase a subject repeatedly just out of a sense
of sadistic pleasure, which does happen from time to
time, they could be liable for the California crime of
TORTURE (Penal Code 206), a conviction for which
carries a life sentence. Whereupon: This plaintiff
brings to the attention of this Honorable Court; Ten
[10] points of presumptive evidence as a balancing
test of whether the tasing was "reasonable" under

the circumstances; to wit:

a) Was the subject suspected for something
minor and/or nonviolent, like a traffic
infraction, or something more serious, like
armed robbery or homicide?

This plaintiff was sought for "questioning"
of an alleged commercial property crime
in the city of Detroit, for Breaking & Entering.

b) Was the subject in imminent danger of hurting
himself or the officers?  No.

This plaintiff was relaxing at his residence
in his shirt, pajama-bottoms, and house
slippers when the Detroit Police Department,
assisted by the Melvindale Police Department,
breached his apartment door; WITHOUT A
WARRANT!

c) Was the subject armed or wearing clothes
that might conceal a weapon?  No.

This plaintiff, as stated supra at [b], was relaxing in his leased apartment, ready for bed, enjoying the company of his lady and her neighbor friend, when said agents of the two departments breached the door; and this man while standing in the middle of the apartment, with his hands raised to the ceiling, with his back to the officers; UNARMED, surrendered peacefully, scared out of his mind.

d) Were bystanders around or was anyone in danger of being taken hostage? Yes and No.

This plaintiff, in accord with part [c] supra; was tased repeatedly in his apartment while both his girlfriend and her neighbor friend observed in horror; then watched as the hostile agents placed restraints on this man and dragged him out to their vehicles, gasping for air, and in pain.

e) Did the officers give a warning before firing the taser?  No.

The officer, before the illegal search and seizure of the habitation; after the ultra vires breach of the apartment by at least seven [7] agents; IMMEDIATELY, within a second or two, deployed two [2] probes directly into this free man's lower spinal-cord; then continuously, three-times, shocked this unarmed man with 50,000 volts of electricity. NO WARNING WAS EVER GIVEN!

f) Were less intrusive means, like pain compliance; available to the officers, even if they were less convenient?  Yes.

This plaintiff, was never afforded an option to comply with any alternative means, because as soon as the apartment door was broke down, this man was fighting for his every breath while being electrocuted repeatedly while officer MENDOZA stood laughing over him.

g) Was backup available or on the way? Yes.

As stated supra at [e], there was approximately Seven [7] or more officers on the scene of the locus delicti.

h) Was the subject handcuffed or otherwise restrained at the time of tasing? No.

This plaintiff, as stated supra at [e], received NO WARNING from any officers during their show of force; THEY WERE TOO BUSY APPLYING EXCESSIVE FORCE NOT JUSTIFIED UNDER THE CIRCUMSTANCES.

i) Did the subject appear to be mentally disturbed or high on drugs? Yes.

This plaintiff suffers from Bi-Polarism and Attention Deficit Hyperactive Disorder (ADHD); which requires him to take controlled substances namely: [1] ADDERAL; [2] SEROQUEL; [3] EFFEXOR; [4] ZANEX; [5] NEURONTIN; [6] SOMA; and, [7] LORTAB. These medications

help regulate neurological deficiencies in this man's brain so he can cope with everyday demands that come natural for a normal human being. He takes these daily under a Doctor's orders. In light of these facts, he has an altered physiology and is considered vulnerable or high risk for cardiac arrest under these circumstances; WHERE HE IN FACT DID DIE AS A RESULT OF HIS SENSELESS INJURY.

j) Did the subject comply with the officers instructions, even if slowly or with some confusion? Yes.

This plaintiff, as stated at [f] supra; was NEVER afforded an opportunity to comply with any type of command, because before he realized what was happening to him, he was laying on the apartment floor having convulsions, hearing his girlfriend crying and full of confusion.

[- 20 of 25 -]

# CLOSING ARGUMENT

May it please this Honorable Court, as this Claim is premised strictly on conceptions of analytical jurisprudence; and it begs the question: DOES OUR COURTS IN THE UNITED STATES, REALLY GIVE EFFECT TO THE ACTS OF STATE OF OTHER FOREIGN STATES, IF THEY ARE CONSISTENT WITH THE POLICY AND LAW OF THE UNITED STATES?" This plaintiff believes it does. See BANCO NACIONAL de CUBA v. FIRST NATIONAL CITY BANK OF NEW YORK, 270 F.supp. 1004 (U.S.D.C. S.D. 1967), where the plaintiff [Banco Nacional] a financing agent and instrumentality of Cuba, filed an action in the United States against New York Bank to recover excess realized by New York Bank on sale of collateral and deposits made by nationalized foreign banks in New York Bank. In this case, the District Court, Frederick van Pelt Bryan, J., held that : "UNDER STATUTE DECLARING THAT COURTS SHOULD NOT REFRAIN ON GROUND OF ACT OF STATE DOCTRINE FROM DETERMINING MERITS IN CASES INVOLVING CONFISCATION BY FOREIGN STATE IN VIOLATION OF PRINCIPLES OF INTERNATIONAL LAW, FOREIGN GOVERNMENT'S SEIZURE OF PROPERTY OF NEW YORK BANK AS RETALIATION FOR REDUCTION OF SUGAR QUOTA WITHOUT PROVIDING ADEQUATE COMPENSATION CONTRAVENED PRINCIPLES OF INTERNATIONAL LAW AND NEW YORK BANK WAS ENTITLED TO SETOFF AGAINST FOREIGN GOVERNMENT'S CLAIM ... FOR SEIZED PROPERTIES." (EMPHASIS AND UNDERLINE MINE). Whereas: The Detroit Police Department, also an instrumentality of the State of Michigan, along with its aider and abettor, the Melvindale Police Department; must discharge

[ - 21 of 25 - ]

their authority powers, appointed by the State, as delegated to it under the Tenth Amendment of the U.S. Constitution; in order to retain its standing under the State's corporate veil of qualified immunity. But, as in [Banco Nacional, supra] the moment Cuba enacted ex post facto legislation in violation of the policy and law of the United States, their assertion of sovereign immunity as an act of state for extraterritorial jurisdiction WAS OF NO EFFECT because of the conflict of laws. (EMPHASIS AND UNDERLINE MINE). Whereas The moment ab initio an agent or agents of the instrumentality act outside the scope of the state agencies authority [IN RETALIATION]; these acts are "private" and taint the whole fabric of Justice from that point forward in connection with procedural due process standards and the chain of custody; evidence seized through ultra vires means, and fraudulently fabricated and entered into the official record as the truth, while purposely not including all the foregoing constitutional violations [private acts]; therefore, BREAKS THE CHAIN OF CUSTODY AND RENDERS THE EVIDENCE OR PAPER TRAIL VOID AND INADMISSIBLE; as said private acts are fruit-of-the-poisoness-tree. Furthermore: These acts while performed and enforced under color of authority, as in [Banco Nacional, supra] should not be given effect and/or full faith and credit or recognition as an act of state, as said private acts herein this public document attested to under penalty of perjury, ENTITLES THE PLAINTIFF/CLAIMANT TO SETOFF AGAINST THE STATE OF MICHIGAN, AS SAID PRIVATE ACTS ARE IN CONFLICT WITH

[-22 of 25-]

THE SUPREME LAW OF THE LAND OF THE SUPREMACY CLAUSE OF ARTICLE VI OF THE U.S. CONSTITUTION; the instrument [UCC § 1-201 (3)] by which all incorporated states owe their fiduciary duties in accord with U.S. Const. Art. VI, cl. 3, for purposes of liability under the doctrine of Adverse domination, where the state of Michigan [as Principal] hides the wrongful or fraudulent conduct of Two of its instrumentalities [hereinbefore, Agencies and Agents]; THEREIN, PERFECTING THE "STRIPPING" CLAUSE OF ALL U.S. CONSTITUTION ELEVENTH AMENDMENT IMMUNITY UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT FOR CRIMES [27 CFR § 72.11] AGAINST THE LAW OF NATIONS [U.S. Const. Art. I, Section 8, cl. 10].

# RELIEF

WHEREFORE, PREMISES CONSIDERED: Plaintiff/Claimant moves this Court to remove the State of Michigan, County of Wayne, action brought against him for Breaking and Entering, where he now sits in the Wayne County Jail under inmate No. 2012011262; to the United States District Court for the Eastern District of Michigan, for cause shown herein. This I submit in good faith pursuant to the exception proviso in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746 (1971), where the current action brought by the Wayne County Prosecutor is in bad faith. WHEREON: The Plaintiff/Claimant must prevail as a matter of law and fact, and Demands Judgment of Acquittal; following said removal, safe passage, and change of venue pursuant to federal question jurisdiction under 28 USCA § 1331.

[– 23 of 25 –]

I retain standing, without prejudice, toward punitive damages in accord with BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996); for illegal seizure of my private property: My Life; for public use [The Police Powers], WITHOUT PROVIDING ADEQUATE COMPENSATION. U.S. Const. Amend. V.

The Plaintiff/Claimant requests Appointment of Counsel, etc., pursuant to 28 USCA § 1915.

[— 24 of 25 —]

Defendant's Information

Name                                          Position

  Melvindale Police Department (John Doe) Officer      Unknown

Street/P.O. Box          City          State     Zip Code

   3100 Oakwood Blvd.      Melvindale     MI    48122

Are you suing this defendant in his/her:

    ☐ Personal Capacity  ☐ Official Capacity  ☒ Both Capacities

Are you suing more than one defendant?

              ☒ Yes    ☐ No

[-25 of 25-]

John M. Matelic
#: 202001362
Wayne County Jail
570
St. Clairon St.
Detroit, Mich.

Legal Mail

18 USC § 1702 et seq.
Date: 08/05/2012

United States District Court

Theodore Levin U.S. Courthouse

231 W. Lafayette Blvd, Room 564

Detroit, Mich.   48226

Attn: Clerk of the Court

Metroplex MI 480 ZIP
MON 06 AUG 2012 PM

# CIVIL COVER SHEET FOR PRISONER CASES

| Case No. 12-13523 | Judge: Avern Cohn | Magistrate Judge: R. Steven Whalen |
|---|---|---|

| **Name of 1ˢᵗ Listed Plaintiff/Petitioner:**<br>JOHN MICHAEL MATELIC | **Name of 1ˢᵗ Listed Defendant/Respondent:**<br>BENNY MENDOZA |
|---|---|
| **Inmate Number:** 2012011262 | **Additional Information:** |
| **Plaintiff/Petitioner's Attorney and Address Information:** | |
| **Correctional Facility:**<br>Wayne County Jail - Division 2<br><br>525 Clinton Street<br>Detroit, MI 48226<br>WAYNE COUNTY | |

**BASIS OF JURISDICTION**
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question

**NATURE OF SUIT**
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus
- ☒ 550 Civil Rights
- ☐ 555 Prison Conditions

**ORIGIN**
- ☒ 1 Original Proceeding
- ☐ 5 Transferred from Another District Court
- ☐ Other:

**FEE STATUS**
- ☒ IFP *In Forma Pauperis*
- ☐ PD Paid

## PURSUANT TO LOCAL RULE 83.11

1. **Is this a case that has been previously dismissed?**
   - ☐ Yes   ☒ No
   - ➢ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

2. **Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)**
   - ☐ Yes   ☒ No
   - ➢ If yes, give the following information:
     - Court: _____
     - Case No: _____
     - Judge: _____

MIED (Rev. 07/06)  Civil Cover Sheet for Prisoner Cases