UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MATELIC,

                                   CIVIL ACTION NO. 12-13523

           Plaintiff,

v.

                          MAGISTRATE JUDGE R. STEVEN WHALEN

BENITO MENDOZA, ET AL.,

           Defendants.

_____/

**OPINION AND ORDER**

This is an excessive force case brought under 42 U.S.C. § 1983.  Before the Court is

Defendant Benito Mendoza's Motion for Summary Judgment [ECF No. 100]. Plaintiff has

not filed a response. For the reasons discussed below, Defendant's motion is GRANTED,

and the claim against Benito Mendoza is DISMISSED WITH PREJUDICE.

**I.   FACTS**

In his Amended Complaint, filed December 12, 2016 [ECF No. 66], Plaintiff, a

resident of Melvindale, Michigan at the time of the events in question, makes the following

allegations.

On September 15, 2011 following a "long history of harassment and misconduct" by

Detroit police officer Defendant Benito Mendoza, Mendoza and Melvindale police officer

Defendant David Taft entered Plaintiff's apartment, purportedly to serve a warrant and arrest

Plaintiff.  *Amended Complaint*, ¶ 9.  Plaintiff alleges that he later discovered that no warrant

had been obtained prior to the arrest. *Id.* Upon entry by the two Defendant officers, Plaintiff turned his back to the officers and placed his hands above his head. *Id.* at ¶ 10. He states that Defendants Mendoza and Taft were joined by two other officers and that additional officers were called to the scene. *Id.* at ¶ 11.  Plaintiff states that he was "visibly unarmed," "clearly outnumbered" by several police officers, and did not pose a threat of danger or risk of flight. *Id.* at ¶¶ 12-14.  Despite the fact that Plaintiff had his back turned to the officers and hands above his head waiting to be cuffed, Taft used a tasing device to "tase" Plaintiff in the "lower spinal cord." *Id.* at  ¶ ¶ 15-16.  Plaintiff alleges that Defendant Mendoza then instructed Defendant Taft to tase Plaintiff a second time, after which Plaintiff was tased a second and third time. *Id.* at ¶ 16.  Plaintiff alleges that at no point did he receive a verbal warning before being tased. *Id.* at ¶ 17.  As a result of the multiple, close range tasings, Plaintiff required inpatient hospitalization. *Id.* at ¶ 19.

Plaintiff alleges that Defendants acted in contradiction of the written policies of both the City of Detroit and the City of Melvindale. *Id.* at. ¶ 18.  He asserts a single count of excessive force based on the use of the taser, and asks for declaratory relief as well as damages for the alleged Fourth and Fourteenth Amendment violations.

Appended to Defendant's motion is the deposition transcript of co-Defendant David Taft, a Melvindale Police Detective at the time of the events in question.[1] He testified that

---

[1] On May 27, 2020, the claims against Taft were dismissed as time-barred under the three-year statute of limitations applicable to claims under § 1983. ECF No. 102.

on September 15, 2011, he received a call from Defendant Mendoza, who was a Detroit police officer. Mendoza told him that he has an arrest warrant for the Plaintiff, and that the Plaintiff had agreed to turn himself in at a Melvindale restaurant [ECF No. 100-1, PageID.722-723]. Taft and Mendoza both went to the restaurant, but the Plaintiff failed to show up as promised. *Id*., PageID.724. They then examined Melvindale records, and learned that about a week earlier, on September 7, 2011, Melvindale police responded to a domestic dispute involving the Plaintiff, and when officers arrived at his residence, Plaintiff fled by jumping out of a window. *Id*., PageID.720-721, 724.  Taft, Mendoza, and two uniformed Melvindale officers then went to Plaintiff's residence. Taft, accompanied by Mendoza, knocked on the door and announced who they were; one of the uniformed officers was stationed at the back door, the other by a window. *Id*., PageID.725-726.

Taft testified that the Plaintiff refused to open the door, saying that he had a knife to his throat and that he would kill himself.  *Id*., PageID.727. At that point, said Taft, the matter became his (Melvindale's) case, not Detroit's or Mendoza's. *Id*.  Taft testified that he heard female voices in the residence telling Plaintiff to let the officers in. However, Plaintiff told them he would not do so. Taft perceived that there was danger to the individuals inside the house, as well as to Plaintiff, because the Plaintiff was not only saying that he would kill himself, but also said that he wanted "Xanax and a kiss" from his girlfriend, and would not let the officers in even though the females were asking him to do so. Nor did Taft believe that he would let the females out of the residence. Based on the Xanax comment, Taft believed

the Plaintiff may have taken pills. He said that at that point, the situation was "volatile." *Id*., PageID.728-730. Taft then made the decision to kick in the door. He said that it was his decision to do so, not Mendoza's. *Id*., ECF No.730-731.

Once inside the residence, Taft went straight to Plaintiff, who was not armed at that time, and attempted to restrain him. He attempted to handcuff the Plaintiff, but Plaintiff resisted, thrashing about. *Id*., PageID.731-732. Taft said that he was arresting the Plaintiff based on the events occurring at the Melvindale residence, not based on Mendoza's Detroit warrant. *Id*., PageID.733. He was finally able to handcuff the Plaintiff only after Officer Easton, one of the uniformed officers, tased the Plaintiff. *Id*. Taft testified that it was Easton's decision to use the taser, and that he never heard Mendoza give an order to tase the Plaintiff, or any other order. He said that Mendoza would not have done so because as a Detroit officer, he was out of his jurisdiction. *Id*., PageID.736.

Plaintiff was then taken to the Melvindale police station, where he was compliant with the directives of the officers. *Id*., PageID.735.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.

-4-

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff."  *Anderson*, 477 U.S. at 252 (emphasis added).  If the non-moving party cannot meet that burden, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

I begin by noting that Plaintiff has not filed a response to the Defendant's summary judgment motion, nor has he proffered any evidence to rebut the Defendant's exhibits.  "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 Fed. App'x. 368, 372 (6th Cir. 2013) (quoting *Hicks v. Concorde Career Coll.*, 449 Fed. App'x. 484, 487 (6th Cir. 2011)(holding that court may properly decline to consider the merits of a claim when a plaintiff fails to address it in response to a summary judgment motion)). *See also Clark v. City of Dublin*, 178 Fed. App'x. 522, 524-25 (6th Cir. 2006). Nevertheless, the court may not grant a motion for summary judgment to which a plaintiff has not responded "without first examining all the materials properly before it under Rule 56(c)." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014)(quoting *smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).  "Therefore, even where a motion for summary judgment is unopposed (in whole or in part), a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *Briggs v. University of Detroit-Mercy*, 611 Fed. App'x. 865, 871 (6th Cir. 2015).  Thus, if the nonmoving party in a summary judgment motion fails to discharge its own burden of responding with specificity, "its opportunity [to do so] is waived and its case wagered." *Id*., fn. 4 (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th

Cir. 1989)).

Here, the Plaintiff has lost the wager. His claim of excessive force is based on the theory that Detective Taft used a taser on him, and then Defendant Mendoza "ordered" Taft to tase him again. Yet, the unrebutted evidence that Defendant Mendoza has provided, in the form of the sworn deposition testimony of David Taft, shows, first, that it was Officer Easton, not Taft, who tased the Plaintiff. The testimony also shows that Taft did not hear Mendoza give any orders, much less an order to employ a taser. In fact, Taft testified, at the point when the officers entered the residence, it was *his* case, a Melvindale case, not a Detroit case, and Mendoza would not have given orders to officers outside his own jurisdiction. The Plaintiff has not offered one shred of evidence to rebut Taft's testimony.

The Plaintiff in a § 1983 case must show that a named defendant was personally involved in the allegations underlying the Complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Taft's unchallenged testimony shows that Mendoza had no involvement in tasing the Plaintiff, and that at most, he was merely present when Easton employed the taser. In *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-207 (6th Cir. 1998), the Court explained:

> "[I]n order for liability to attach to [defendants] for the alleged § 1983 violations, Plaintiff had to prove that they did more than play a passive role in the alleged violation or showed mere tacit approval of the events....Liability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence. Plaintiff must show that [defendants] otherwise encouraged or condoned the

actions of the other Defendants. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). As such, where the materials submitted by Plaintiff in response to [defendants'] motion for summary judgment failed to show, in any respect, that these two Defendants encouraged or condoned any alleged constitutional violations, the district court properly granted the motion for summary judgment."

In any event, Plaintiff has not provided any evidence that under these circumstances, the use of a taser was an ureasonable application of force. In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor, supra*. That standard is objective, and is applied without reference to the officer's subjective motivations. *Id.* In *Gaddis v. Redford Township*, 364 F.3d 763,772 (6th Cir. 2004), the Court set forth the following factors to be considered:

"Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2]whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that

"police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397.

In this case, the chain of events culminating in the use of a taser started with the Plaintiff not following through with his promise to meet Mendoza at a Melvindale restaurant. When the officers arrived at his residence and identified themselves, the Plaintiff refused to come out, and stated the he was armed with a knife and would kill himself. Adding to the what Taft referred to as a "volatile" situation, Plaintiff rebuffed the pleas of the females inside the residence to let the police in. These circumstances reasonably justified Taft in forcibly entering the residence, and he was met with physical resistance when he attempted to arrest and restrain the Plaintiff. Under the *Gaddis / Graham* formulation, and giving deference to Taft's and Easton's response to this rapidly escalating situation, the tasing of the Plaintiff was reasonable under these circumstances, and the Plaintiff has not shown otherwise. *Higgason v. Stephens*, 288 F.3d 868, 876–877 (6th Cir.2002). The application of reasonable force does not violate the Fourth Amendment.

Because there was no constitutional violation, Defendant Mendoza is also entitled to qualified immunity. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir.2002)("Plaintiff's case is barred by the affirmative defense of qualified immunity at the inception inasmuch as Plaintiff has failed to show a violation of a constitutionally

protected right")(citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc )).

## IV.   CONCLUSION

Defendant's Motion for Summary Judgment [ECF No. 100] is GRANTED, and

Defendant Benito Mendoza is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Date: October 21, 2020                    s/R. Steven Whalen
                                          R. Steven Whalen
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 21, 2020 electronically and/or by U.S. mail.

                                          s/Carolyn M. Ciesla
                                          Case Manager

-10-